## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE )
COMMISSION, )
                               )
                 Plaintiff, )
                               )
            v. )      Civil Action No. 1:20-154
                               )
HVIZDZAK CAPITAL MANAGEMENT, )
LLC; HIGH STREET CAPITAL LLC; )
HIGH STREET CAPITAL PARTNERS, )
LLC; SHANE HVIZDZAK; and )
SEAN HVIZDZAK, )
                               )
               Defendants. )

## <u>MEMORANDUM OPINION</u>

Presently before the Court is the Motion to Stay Proceedings and supporting Memorandum of Law (Docket Nos. 80, 81) filed by Defendants Shane Hvizdzak ("Shane") and Hvizdzak Capital Management, LLP, High Street Capital LLP, and High Street Capital Partners, LLC (collectively, the "Entity Defendants"), Defendant Sean Hvizdzak's ("Sean") Response to and Joinder in Request for Stay (Docket No. 82), Plaintiff Securities and Exchange Commission's ("SEC") Opposition to Defendants' Motion to Stay Proceedings (Docket No. 83), and Defendant Sean Hvizdzak's Reply (Docket No. 88), along with the Reply Declaration of Efrem M. Grail in Support of Defendant Shane Hvizdzak's Motion to Stay Proceedings (Docket No. 89).  Additionally, the parties filed a Joint Status Report (Docket No. 90).  The Court held oral argument on July 21, 2021, and the motion is now ripe for disposition.  For the reasons set forth herein, Defendants' motion is granted in part and denied in part.

## I.      <u>BACKGROUND</u>

This SEC civil enforcement action alleges that Defendants, brothers Shane and Sean Hvizdzak, and the affiliated Entity Defendants, violated the Securities Act of 1933 and the

Exchange Act of 1934 by fraudulently raising and subsequently misappropriating tens of millions of dollars of largely retail investor funds from the sale of limited partnership interests in High Street Capital Fund USA, LP (the "Fund") that they claimed would be invested in digital assets. (Docket No. 74, ¶ 1 (Amended Complaint)).

Shortly after this action commenced, the Court entered a temporary restraining order followed by a preliminary injunction freezing assets to preserve investor funds.  (Docket Nos. 8, 21, 26, 46).  The SEC represents that it has identified and secured $6 million in such assets while another estimated $24 million in investor assets remain missing.  (Docket No. 83 at 2).

The parties have been conducting discovery in accordance with the Court's Case Management Order which established a fact discovery deadline of June 30, 2021.  (Docket No. 57).  During that period, the Federal Bureau of Investigation ("FBI") and United States Department of Justice through the United States Attorney's Office have been conducting a criminal investigation targeting Shane and his involvement in these investments.  (Docket No. 81-1 ("Grail Dec."), ¶¶ 3-6; Docket No. 89 ("Grail Reply Dec."), ¶¶ 3-4).  Thus far, Shane consistently invoked his privilege against self-incrimination pursuant to the United States and Pennsylvania Constitutions.  (Grail Dec., ¶¶ 7-8).  The SEC noticed his deposition to be taken at the conclusion of the discovery period, but Shane's counsel informed counsel for the SEC that he intended to invoke his Constitutional privileges rather than testify, and then he and the Entity Defendants filed the instant Motion for Stay.  (Docket No. 80; Grail Dec., ¶ 8).  On June 29, 2021, the Court stayed this matter for forty-five (45) days, pending oral argument and disposition of the motion.  (Docket No. 84).

## II.   <u>DISCUSSION</u>

This Court has discretion to stay a civil proceeding.  <u>See</u> <u>Landis v. North American Co.</u>, 299 U.S. 248, 254 (1936); <u>Bechtel Corp. v. Local 215, Laborers' Int'l Union</u>, 544 F.2d 1207, 1215

(3d Cir. 1976).  While staying a case is an extraordinary measure, United States v. Breyer, 41 F.3d 884, 893 (3d Cir. 1994), and criminal defendants have no generalized due process right to stay related civil proceedings, Baxter v. Palmigiano, 425 U.S. 308, 318-19 (1976); DeVita v. Sills, 422 F.2d 1172, 1181 (3d Cir. 1970), courts will not hesitate to grant a stay when the interests of justice seem to require it.  See Kashi v. Gratsos, 790 F.2d 1050, 1057 (2d Cir. 1986); see also United States Secs. and Exch. Comm'n v. Santillo, No. 18 Civ. 5491, 2018 WL 6039324 (S.D.N.Y. Nov. 2, 2018); Aluminium Bahrain B.S.C. v. Dahdaleh, No. 8-299, 2012 WL 5305167 (W.D. Pa. Oct. 25, 2012); Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd., 7 F. Supp. 2d 523 (D.N.J. 1998).

The Court's discretion to stay a matter is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."  Landis, 299 U.S. at 254-55.  In deciding how to exercise this discretion, the Court must "initially assess to what extent the issues in the criminal and civil cases overlap, and consider the status of the criminal case, including whether the defendant has been indicted."  Int'l Fidelity Ins. Co. v. Podlucky, No. 07-0235, 2007 WL 2752139, at *2 (W.D. Pa. Sept. 19, 2007) (citing In re Derivative Litig., No. 06-02964, 2007 WL 1101276 (E.D. Pa. April 11, 2007)).  Then, the Court must weigh the following factors:  (1) the plaintiff's interests and the potential prejudice to plaintiff of a delay; (2) the prejudice to the defendant; (3) the interest of the Court; (4) the interests of third parties; and (5) the interest of the public.  See id. (citing Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc., 87 F.R.D. 53, 55 (E.D. Pa. 1980)).

### A.  SIMILARITY OF ACTIONS AND STATUS OF CRIMINAL MATTER

The Court must assess whether and to what extent the issues in the criminal and civil cases overlap.   Here, the SEC alleges that Defendants fraudulently raised and subsequently

misappropriated tens of millions of dollars of largely retail investor funds from the sale of limited partnership interests that they represented would be invested in digital assets.  (Docket No. 74, ¶ 1).  Furthermore, the SEC asserts that Defendants moved the investors' money "through several bank accounts in the United States, and then to numerous digital asset exchanges throughout the globe and to self-custodial digital asset wallets on the block chain that render them difficult to trace."  (Docket No. 83 at 2).  Defendants proffer declarations from counsel for Shane and the Entity Defendants averring that Shane is a target of a Department of Justice criminal investigation and the core of this investigation is Shane's conduct regarding the investors' money at issue in the present civil case.  (Grail Reply Dec., ¶ 3).  These declarations further assert that "the evidence in each of these matters is the same, as noted in proceedings for the return of [Shane's] laptop and cell phone, because of his need for them in these civil proceedings."  (Grail Dec., ¶ 5).[1]  These declarations also aver that Shane's counsel received correspondence subject to Federal Rule of Evidence 408 from the responsible Assistant U.S. Attorney as recently as June 16th and posits that Shane "will be indicted for the conduct at issue here."  (Grail Reply Dec., ¶ 4).

The SEC opposes the stay, arguing that there currently are no criminal charges and thus it would be "speculative to conclude that the issues in the two matters overlap in their entirety." (Docket No. 83 at 4).  However, the Court is not to consider whether the civil and criminal matters "overlap in their entirety," but whether and to what extent the issues overlap.  The record presently before the Court demonstrates adequate similarity of issues weighing in favor of a stay.

The SEC also contends that the lack of indictment "adds to the uncertainty of the status or timing of the criminal proceedings."  (Docket No. 83 at 4).[2]  Indeed, while the "strongest case for

---

[1]     The Court also takes note of the "Notice of Filing in a Related Matter" regarding Shane's Motion Pursuant to Federal Rule of Criminal Procedure 41(g) and Local Criminal Rule 41.  (Docket No. 51).

[2]     On August 10, 2021, after the parties had filed their briefs regarding the motion to stay, Shane filed a "Notice of Filing of Indictment Re Pending Motion to Stay," asking the Court to take notice "on information and belief, of the filing by the United States, through its Office of the U.S. Attorney in and for the Western District of Pennsylvania, of

a stay . . . occurs during a criminal prosecution after an indictment is returned" where the "potential for self-incrimination is greatest during this stage, and the potential harm to civil litigants arising from delaying them is reduced due to the promise of a fairly quick resolution of the criminal case under the Speedy Trial Act," each case must be evaluated individually and a stay is still possible pre-indictment if the Government is conducting an active parallel criminal investigation.  See Walsh Secs., Inc., 7 F. Supp. 2d at 527 (citing the Hon. Milton Pollack, United States Senior Judge, Southern District of New York, "Parallel Civil and Criminal Proceedings," 129 F.R.D. 201, 203 (1989)).  Here, it is plainly evident that the Department of Justice is targeting Shane in a parallel criminal investigation of his alleged conduct that overlaps with the instant civil matter, for which he has now been indicted.  Even so, those concerns, and the SEC's and the public's interests in swiftly adjudicating the instant civil matter, can be reevaluated as circumstances change. Accordingly, this factor weighs in favor of a stay of at least some discovery at this juncture.

## B.   THE INTERESTS OF PLAINTIFF, THIRD PARTIES, AND THE PUBLIC

As the SEC points out, it is, unlike a private litigant, a civil enforcement agency tasked with protecting harmed investors.  As such, the SEC filed this lawsuit to protect the interests of the investing public, generally, as well as those specific investors involved in this case.  The SEC further contends that any stay that delays the resolution of this case will "be borne by the investors who provided Defendants with tens-of-millions . . . of dollars, only to learn that those funds were not properly invested and largely remain missing."  (Docket No. 83 at 7-8).  Indeed, thus far, the SEC has located approximately $6 million of investor funds that are now protected from dissipation by the Court's Orders.  (Docket Nos. 8, 21, 26, 46).  The SEC represents that another estimated $24 million in investor assets remain missing.  (Docket No. 83 at 2, 6).  As set forth in

---

an Indictment, returned by the Grand Jury and filed with this Court on or about this date, at *United States v. Shane Hvizdzak, et al.*, Case No. 1:21-cr-30."  (Docket No. 92).

the parties' Joint Status Report, in addition to taking Shane's deposition, the SEC has two outstanding non-party subpoenas and anticipates possibly issuing one or two additional non-party subpoenas, all focused on locating and securing these missing investor assets.[3]  (Docket No. 90). Accordingly, this factor weighs against a stay, at least regarding the ongoing discovery of missing investor assets.

### C. PREJUDICE TO DEFENDANTS

Shane has been invoking his Constitutional privilege not to respond to written discovery throughout this civil action and he intends to invoke this privilege rather than testify at his deposition.  Because he is defending parallel civil and criminal matters concerning his role in the raising and handling of investor funds from the sale of limited partnership interests in the Fund, doing so requires that he choose between invoking his Constitutional rights and waiving those Constitutional rights to defend himself in the SEC's civil lawsuit.  While it would not be unconstitutional to force a defendant into this choice, see Baxter, 425 U.S. at 318-19, the Court may nevertheless exercise its discretion to stay the civil case in the interests of justice, see Kashi, 790 F.2d at 1057.

The Court notes the burden placed on Shane, Sean, and the Entity Defendants here, particularly when the SEC's principal purpose for taking Shane's deposition would be to locate and preserve additional investor assets, and Sean's purpose for taking Shane's deposition would be to discover and secure testimony and documents that he contends will exculpate him.  Both purposes will be frustrated by Shane's intended invocation of his Constitutional privileges.  Under these circumstances, this factor weighs in favor of a stay in relation to Shane's deposition.

---

[3]     The parties also indicate their intent to conduct expert discovery.  (Docket No. 90).

D.  **INTERESTS OF THE COURT**

The Court has a strong interest in judicial efficiency.  Staying this action could streamline the proceedings because collateral estoppel could prevent re-litigation of issues adjudicated in the criminal matter and because resolution of the criminal case may increase the prospect for settlement of the civil case.  See Pollack, 129 F.R.D. at 204 (cited by Secs. and Exch. Comm'n v. LaGuardia, 435 F. Supp. 3d 616, 622 (S.D.N.Y. 2020)).  Thus, the interests of the Court weigh in favor of a stay.

III.   **CONCLUSION**

Based upon the foregoing analysis, the Court will stay these proceedings solely in relation to Shane's deposition, but will enlarge the discovery period so that the SEC may continue to utilize appropriate discovery devices to search for, locate, and preserve relevant missing investor funds, and so that the parties may pursue expert discovery to the extent such experts are not dependent upon Shane's stayed deposition testimony.  Doing so weighs competing interests and maintains an even balance that preserves Defendants' Constitutional rights while affording the SEC the ability to continue searching for and preserving investor assets.[4]  See Landis, 299 U.S. at 254-55. However, the Court recognizes the burden that an indefinite stay would place upon the SEC, interested non-parties, and the public.  Accordingly, the Court will convene a status conference within ninety (90) days[5] to re-evaluate the efficacy of this partial stay, and thus to consider whether to lift, modify, or extend it, along with other appropriate case management considerations.

An appropriate Order follows.

---

[4]     See Docket No. 83 at 5 ("The SEC continues to use every available tool in civil discovery to locate these missing assets, including through third-party subpoenas.  To stop that process will harm the SEC and the investors it is charged to protect.").

[5]     Prior to this status conference, the parties may move to lift, modify, or extend the stay based upon a change of circumstances or other good cause, and for good reason may also request other modifications to the Court's applicable case management orders or request a status conference.

_s/ W. Scott Hardy_
W. Scott Hardy
United States District Judge

Dated:  August 11, 2021

cc/ecf:  All counsel of record